OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

February 12, 2001

Mr. Thomas A. Davis, Jr., Director
Texas Department of Public Safety
P.O. Box 4087
Austin, Texas 78773-0001

Opinion No. JC-0337

Re: Proper use of magnetic stripe information on
a driver's license (RQ-0316-JC)

Dear Mr. Davis:

You have requested our opinion regarding the proper use of magnetic stripe information on a Texas driver's license. For the reasons indicated below, we conclude that such information may be used only by law enforcement and other governmental officials.[1]

House Bill 571, Act of May 30, 1999, 76th Leg., R.S., ch. 1340, § 1, Tex. Gen. Laws 4554, added section 521.126 to the Transportation Code. That provision states, in its entirety:

> § 521.126. Electronically Readable Information
>
> (a) The department may not include any information on a driver's license, commercial driver's license, or identification certificate in an electronically readable form other than the information printed on the license and a physical description of the licensee.
>
> (b) The department shall take necessary steps to ensure that the information is used only for law enforcement or governmental purposes.
>
> (c) Unauthorized use of the information is a Class A misdemeanor.

TEX. TRANSP. CODE ANN. § 521.126 (Vernon Supp. 2001). In response to the command of subsection (b), the Texas Department of Public Safety (DPS), on July 12, 2000, filed the following proposed rule with the Secretary of State:

---

[1] We note that Senate Bill 293, filed January 19, 2001, and House Bill 1031, filed January 29, 2001, are pending before the 77th Texas Legislature, and if passed as introduced, will change the outcome of this opinion. *See* Tex. S.B. 293, 77th Leg., R.S. (2001) (Introduced Version); Tex. H.B. 1031, 77th Leg., R.S. (2001) (Introduced Version).

>  (a) The information contained in the magnetic stripe of the driver license, commercial driver license, or identification certificate shall only include the information on the face of the license and the physical description of the licensee.
>
>  (b) *Only law enforcement and governmental agency personnel acting in their official capacity can utilize the information provided in this format.*

25 Tex. Reg. 7123 (2000) (emphasis added). You indicate that, "[d]uring the comment period the Department [of Public Safety] received 236 comments objecting to the proposed rule, and one comment in support."[2] On October 12, 2000, the DPS withdrew from consideration the proposed rule. *See* 25 Tex. Reg. 10725 (2000). You inquire about "the meaning of 'law enforcement and governmental purpose' as that term relates to the class of users that may legally obtain and utilize information by swiping the magnetic stripe on the back of the driver license and identification card." Request Letter, note 1, at 2. Specifically, you ask "if 'law enforcement or governmental purposes' restricts utilization of the electronically readable information on the back of a driver's license (DL) or identification card (ID) to only law enforcement and governmental agency personnel acting in their official capacity." *Id.* at 1.

You have provided us with a list of "Reported Uses of the Electronically Readable Information," which we summarize:

- Age Restriction Readers [to check identification to determine the age of the buyer of alcohol and tobacco products]

- Check Verification Systems

- Issuance of State Hunting and Fishing Licenses

- Compliance with Federal Regulations on Financial Institutions

- Identification of United States Savings Bonds and Government Checks

- Foreign Asset Control Regulations

- Private Clubs and Bars

---

[2]Letter from Thomas A. Davis, Jr., Director, Texas Department of Public Safety, to Honorable John Cornyn, Texas Attorney General at 2 (Nov. 21, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

- Access to Chemical and Petroleum Plants

- Social Clubs

- Car Dealerships

- Hotel-Motel Registration

- Public Information Kiosks

*See id.* (Attachment 3). You state that "[a]ll users claim that their practice of swiping the magnetic stripe allows them to more easily comply with the law governing their business, to more easily detect violations of the law related to their business, or that collection of information contained in the magnetic stripe is required to be collected or verified by governmental entities." *Id.* at 2. At present, the information contained on the magnetic stripe is the same information contained on the front of the license, except for a "physical description of the licensee." *See* TEX. TRANSP. CODE ANN. § 521.126(a) (Vernon Supp. 2001). You indicate that "[c]urrently that physical description consists of only the weight of the licensee/I.D. cardholder." Request Letter, *supra* note 1, at 2.

There is little in Texas law or elsewhere, for that matter, that provides enlightenment regarding the meaning of "law enforcement or governmental purposes" in the context of your inquiry. On the one hand, a literal reading of section 521.126 might suggest, like the proposed DPS rule did in fact, that the statute restricts the use of magnetic stripe information to "law enforcement and governmental agency personnel acting in their official capacity." *See* 25 Tex. Reg. 7123 (2000) (withdrawn Oct. 12, 2000, 25 Tex. Reg. 10725 (2000)). On the other hand, it has been argued that, for example, an alcoholic beverage retailer's use of the magnetic stripe information serves a law enforcement purpose because it enables such a retailer to more easily identify, and thus refuse to serve minors, and to determine beyond doubt that a particular driver's license or identification card is fraudulent. It is significant, however, that subsection (b) of section 521.126, commends to the DPS the duty to "take necessary steps to ensure that the information is used only for law enforcement or governmental purposes." *See* TEX. TRANSP. CODE ANN. § 521.126(b) (Vernon Supp. 2001). We believe this provision means that the DPS has the initial discretion to determine what those purposes are. It did in fact do so in its proposed rule.

In our view, the DPS in its proposed rule has defined those purposes entirely in keeping with the legislative intent. In construing a statute, we are admonished to consider, *inter alia*, legislative history. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998). In the circumstances of which you inquire, legislative history provides a clear answer.

During the public hearing on Senate Bill 571 before the Senate Committee on State Affairs, held May 11, 1999, an exchange that took place among the committee chair, Senator Florence Shapiro, Senator Drew Nixon, and Ms. Judy Sibert, manager of the License Issuance Bureau for the DPS, is summarized as follows:

Sen. Nixon: It would be my assumption that if this is used in a bar to check for validity, that is definitely for a law enforcement purpose. I never even assumed that that would have been construed otherwise. Do y'all have a different opinion of that?

Ms. Sibert: I would disagree . . . I would assume that is a retailer not . . . law enforcement. If that bar had somebody from the alcoholic beverage commission or some other law enforcement, they're doing a particular operation that evening that would be construed as law enforcement, but not being an attorney, my personal opinion would be if a bar owner or an employee of a bar wanted to utilize that magnetic stripe to verify age, that that would not be considered law enforcement.

Sen Shapiro: It would be to deny service, but it wouldn't necessarily be to charge them with some offense.

Ms. Sibert: Exactly.

Sen. Shapiro: So it wouldn't apply in this bill.

Ms. Sibert: Exactly.

. . . .

Sen. Shapiro: On line 16, it says "unauthorized use of the information is a Class A misdemeanor." What do you think "unauthorized use" might mean?

Ms. Sibert: My personal interpretation would be utilizing the magnetic stripe by somebody other than a law enforcement entity.

. . . .

*Hearings on Tex. S.B. 571 Before the Senate Comm. on State Affairs,* 76th Leg., R.S., (May 11, 1999).

At the conclusion of the hearing, Senator Nixon, in keeping with his view that retailers should be permitted access to the magnetic stripe information for purposes of law enforcement, proposed an amendment to the bill that would eliminate subsections (b) and (c). On May 25, 1999, Senator Jane Nelson offered a floor amendment to remove those subsections. The amendment was adopted without objection and the bill passed the full Senate. Subsections (b) and (c) were, however, reinstated in conference committee. The present form of Senate Bill 571 finally passed both the

House and the Senate on May 30, 1999. It was subsequently signed by the Governor and became effective on September 1, 1999.

It is apparent that all members of the Senate Committee on State Affairs accepted the construction placed on subsections (b) and (c) by Ms. Sibert, on behalf of the DPS: that access to the magnetic stripe information is limited to law enforcement agency and other government personnel acting in their official capacities. Even Senator Nixon, who disagreed with this reading, understood that his colleagues acquiesced in the DPS view, as evidenced by his attempt to strike those subsections, and Senator Nelson's floor amendment to eliminate them. We may also infer that the refusal by the House to accede to Senator Nelson's amendment demonstrates the significance that body attached to subsections (b) and (c). Thus, in our opinion, legislative history makes a compelling case that the DPS, in its proposed rule, correctly interpreted the legislature's intent in enacting Senate Bill 571. We conclude, therefore, that magnetic stripe information contained on a driver's license or identification card issued by the Department of Public Safety may be utilized only by law enforcement and other governmental agency personnel acting in their official capacities.

## S U M M A R Y

        Magnetic stripe information contained on a driver's license or identification card issued by the Department of Public Safety may be utilized only by law enforcement and other governmental agency personnel acting in their official capacities.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee